HERNÁNDEZ ET AL., PLAINTIFFS AND APPELLEES, *v.* MENDOZA
ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action
of Ejectment.

No. 1767.—Decided May 21, 1918.

EJECTMENT—PRESCRIPTION.—It appearing from the evidence that in the year
1877, or thirty-nine years before the action was brought and thirty-five
years before the first step was taken by the plaintiffs in the defense of their
rights, the present possessor's vendor entered into possession of the prop-
erty as owner and continued as such quietly, publicly and uninterruptedly
until she conveyed it to the defendants, a title by extraordinary prescription
superior to that shown by the plaintiffs must be recognized in the defendants.

The facts are stated in the opinion.
*Mr. Francisco González* for the appellants.
*Messrs. J. R. F. Savage* and *Fernando Vázquez* for the
appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Luis and Ignacio Jorge Hernández brought this action
in the District Court of Humacao to recover an urban prop-
erty then in the possession of defendant Juan Mendoza in
the town of Naguabo.

It was clearly shown at the trial that on February 5, 1877,
Pablo Lemoureux sold the property in question by public
deed to Cecilia Hernández, the mother of the plaintiffs, who
recorded the deed in the registry of property on October 18,
1880. Considered alone, that evidence clearly establishes the
rights of the plaintiffs.

Defendant Mendoza alleged that Cecilia Hernández sold
the said property to Francisca Valdés in July, 1877; that
from that time until 1909 the latter was in public, quiet and
uninterrupted possession thereof as owner, and that the
house being in a dilapidated condition, Francisca Valdés
sold it, together with the lot, to the defendant, who rebuilt
it and from that time held public, quiet and uninterrupted
possession of it as owner. Defendant Mendoza established
his ownership title in accordance with the Mortgage Law in

1909, the year in which he bought the property, and recorded it in the registry of property.

If it is true that Cecilia Hernández disposed of her title of ownership to the property, the alleged rights of the plaintiffs have no foundation. Also, if it is shown that upon the death of Cecilia Hernández in 1877 Francisca Valdés, in good or bad faith, took possession of the property as owner and remained in public, quiet and uninterrupted possession until she sold it to defendant Mendoza, the plaintiffs have no rights.

Let us examine the evidence. At her death in 1877 Cecilia Hernández left three children, the two plaintiffs and Julia. The plaintiffs have never had any direct supervision over the property. At the trial there was introduced in evidence a letter from plaintiff Ignacio Jorge Hernández, known as Juan Bussó, to Francisca Valdés, dated January 3, 1912, or more than thirty years after the death of Cecilia Hernández, in which he said: "I understand that when my mother died she left a house and lot in the town of Naguabo and as there are no other heirs of my deceased mother, my brothers having died, I write you this to ask when you will deliver the property to me; for in a conversation with my uncle he said that you desired to know our address so that you might deliver to us the said property which my said mother, Cecilia Hernández, left us at her death." That is the only evidence offered which reveals any action on the part of the plaintiffs, who left their native town while children and ever since have resided elsewhere.

On the other hand, Julia Hernández continued to reside in Naguabo after the death of Cecilia and lived in the house in question with Francisca Valdés until she died unmarried on August 30, 1891. If Julia Hernández continued in possession of the house as owner, it is obvious, as contended by by the appellees, that her action would benefit the plaintiffs.

The fact of decisive importance in this suit is, therefore, the character of the possession of Francisca Valdés at the death of Cecilia Hernández.

There is nothing specific in the evidence of the plaintiffs to show precisely the capacity in which Julia continued to live in the house after the death of Cecilia. The theory of the plaintiffs is that as the mother was the owner, her heirs, represented by Julia, continued in possession after her death. And, indeed, this must be conceded unless the evidence shows that the defendant acquired the property in one of the two ways indicated.

Defendant Juan Mendoza testified that "he bought the house from Francisca Valdés for $100, but that what he purchased was the ruins about seven years ago; that for forty years he knew that the house was in the possession of Pancha Valdés as owner; that she lived in it, paid the taxes and made some repairs to it during that time."

Francisca Valdés testified that "before she died Cecilia Hernández, the owner of the house, sold it to the witness, who continued to own it; that Cecilia Hernández fell ill and called the witness to attend her and take care of her and her child, saying that 'she was willing to die because the witness was taking care of the child'; that she sold the witness the house for $150 in consideration of her taking care of the child and the house became the property of the witness, who reared the child and had it educated in the Spanish school at considerable expense until at the age of fifteen years the child became consumptive· and died; that Cecilia Hernández gave her a document, which the witness lost along with the tax receipts during the San Ciriaco hurricane when the roof of the house was blown away; that she recalls that Jesús Pereyó and Rafael Rocca took part in the making of that document. * * * "

Witness Jesús Pereyó testified that "many years ago and shortly after he arrived at Naguabo about the year 1877, he one day was in the office of the mayor of Naguabo with Rocca and Maldonado and they went to the house of Cecilia Hernández who, in the presence of the witness and the others,

said that she wished to give a small house to Francisca Valdés, and Maldonado, who was a lawyer, wrote the document in the presence of all; that Cecilia Hernández donated to Francisca Valdés by the said document a small, dilapidated house which she said she owned, in consideration of the attention which Francisca Valdés had given her and would give her child. It must be borne in mind that all this was arranged by Rocca, who was a great friend of Cecilia, and because of her kind heart. That document was drawn up in the form of a deed of gift and was signed by the witness, Rocca and Maldonado * * * ; that Francisca Valdés remained in possession of the said house for many years; that she lived in the house all the time until it became unroofed and then sold it to Juan Mendoza * * * ; that the consideration for the contract which he witnessed consisted of the care which Francisca Valdés had taken of Cecilia Hernández and the future support of the child, as the mother of the child was very ill * * * ; that Francisca Valdés paid no money; that the price was fixed at $150 which she estimated was due for the services to her and for the future care of the child; that it was a gift based on her future and past care of the child, but she did not pay anything at that time."

Francisco Fuentes testified that "he knew the house about the year 1880 or 1882 and knew Pancha Valdés who lived in it with her brother Pedro and a little girl whom she reared, but who was not her daughter; that from that time he knew that she occupied the house until eight or nine years later, when she sold it to Juan Mendoza * * *; that she occupied the house as owner. * * *"

The foregoing evidence was considered by the trial court as follows:

"The evidence introduced by the defendants in support of their claim that the house was sold to Francisca Valdés by Cecilia Hernández has failed to convince the court. Francisca Valdés herself testified that she acquired the property by virtue of a private

instrument which she had lost, and in such circumstances she endeavored to corroborate her testimony by that of witness Jesús Pereyó, but instead of a corroboration a real conflict resulted between the testimony of the defendant and of the witness. She testified that the lost document recited that ·Cecilia Hernández sold the house for the sum of $150 on the condition that defendant Valdés should always care for Julia Hernández, the daughter of the alleged vendor. Pereyó, who alleged that he was present when the transaction was made, testified that no money was passed and that the only consideration for the contract was that Francisca Valdés agreed to take care of the child, Julia Hernández.

"We are of the opinion that Cecilia Hernández made no sale whatever to Francisca Valdés, and this being so, conceding that the title by purchase of Mendoza were sufficient for the acquisition of an ownership title by prescription to the property claimed in the complaint, it could never be contended that he acquired such title, inasmuch as ten years have not elapsed since he came into possession and his period of possession cannot be added to that of his vendor, for the latter, Francisca Valdés, did not hold as owner, but as a mere tenant without any title and not in good faith. * * * ''

As a rule this court accepts the findings of fact of the judge who had an opportunity of personally examining the witnesses, but this does not mean that it is bound to accept them in every case. The defendants attempted to establish two facts, the conveyance of the ownership of the property to Francisca Valdés and the possession by her and by Mendoza as owners for a period exceeding thirty years, and the district court gave no credence to the evidence introduced for that purpose, namely, the testimony of Juan Mendoza, Francisca Valdés, Jesús Pereyó and Francisco Fuentes. Nobody contradicted the testimony of the said witnesses and the conflict pointed out by the trial court between the testimony of Valdés and Pereyó is more apparent than real, and if it reveals anything it is that the said witnesses did not reach an understanding before the trial. Francisca Valdés ·did not testify that she paid the sum of $150. She testified that Cecilia sold her the house for $150 in consideration of

her taking care of the child. And this statement by Valdés can be harmonized with witness Pereyó's concluding statements which we have transcribed.

In our opinion there is no ground for rejecting the said testimony and if given the value which it deserves it must be concluded that in the year 1877, or thirty-nine years before the filing of the complaint and thirty-five years before the date of the letter of plaintiff, Ignacio Jorge Hernández, which was the first step taken by the plaintiffs in defense of their right, Francisca Valdés, who sold the property to the present holder, entered into the possession of the property as owner, not without title, but with a title more or less perfect, and continued in quiet, public and uninterrupted possession until she conveyed the property to defendant Mendoza. This being the case, Francisca Valdés and her successor Mendoza must be held to possess at least a title by extraordinary prescription, which is superior to the title of the plaintiffs.

"Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for thirty years without the necessity of title or good faith and without distinction between present and absent persons. * * * " Civ. Code, sec. 1860.

See the cases of *Estate of Lampón* v. *Estate of Rivera*, 16 P. R. R. 321, and *Pesquera* v. *Fernández et al.*, 22 P. R. R. 49.

Our opinion being as stated, it is superfluous to consider and decide the other question raised by the appellants in their brief.

The judgment appealed from should be reversed and in place thereof another should be rendered dismissing the complaint.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.